# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| WANDA OLSEN, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| | ) CASE NO. CIV-13-244-R |
| CAROLYN W. COLVIN, | ) |
| ACTING COMMISSIONER OF SOCIAL | ) |
| SECURITY ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the Defendant Commissioner's final decision denying Plaintiff's application social security income benefits (SSI) under the Social Security Act. United States District Judge David L. Russell referred this matter for proceedings consistent with 28 U.S.C. § 636(b)(3), and it is now before the undersigned Magistrate Judge. Upon review of the pleadings, the transcript of administrative proceedings (Tr.) and the parties' briefs, the undersigned recommends that the Commissioner's decision be **AFFIRMED.**

## I. ADMINSTRATIVE PROCEEDINGS

Plaintiff protectively filed her application for benefits on April 29, 2010, alleging a disability onset date of August 29, 2005. Tr. 18, 173-79, 201. Plaintiff's claims were denied at the agency level, and at her request, an Administrative Law Judge (ALJ) conducted a hearing. Tr. 83-84, 85-86, 94-96, 97-99. In his June 29, 2012, decision, the ALJ found that Plaintiff is not disabled within the meaning of the Social Security Act. Tr. 18-27. The Appeals Council of the Social Security Administration declined Plaintiff's

request for review, and so the decision of the ALJ became the decision of the Commissioner. Tr. 1-7. Plaintiff, through counsel, now seeks review of the Commissioner's final decision in this Court.

## II. DECISION OF THE ADMINISTRATIVE LAW JUDGE

The ALJ found that Plaintiff has not engaged in substantial gainful activity since April 29, 2011—the application date, and has the following severe impairments: history of back disorder, Hepatitis C, and major depressive disorder. Tr. 20. The ALJ found Plaintiff's medically determinable impairment of chronic pulmonary obstructive disease to be non-severe. Tr. 20, 22. The ALJ further found that Plaintiff had no impairment or combination of impairments that met or equaled a listing level under 20 C.F.R. Part 404, Subpart P, Ap. 1. Tr. 23.

The ALJ found that Plaintiff has the following residual functional capacity (RFC):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently. The claimant can sit for about 6 hours during an eight-hour workday and can stand and walk for about 6 hours during an eight-hour workday. The claimant can occasionally climb, balance, stoop, kneel, crouch, and crawl. The claimant can understand, remember, and carry out simple, routine, and repetitive tasks. The claimant can respond appropriately to supervisors, co-workers, and usual work situations, but have occasional contact with the general public. The claimant cannot perform work in tandem.

Tr. 24. Based on this RFC finding, the ALJ concluded that Plaintiff could not perform her past relevant work as a cashier. Tr. 25.

However, at step five of the sequential evaluation process, the ALJ found that Plaintiff could perform other work that exists in the national economy in significant numbers. Tr. 26. Using the Medical-Vocational Guidelines as a framework, and the testimony of a vocational expert, the ALJ found that Plaintiff could perform work as a press operator, assembler, and electronics worker. Tr. 26. Based on these findings, the ALJ found that Plaintiff was not under a disability and thus not entitled to benefits. Tr. 27.

### III. STANDARD OF REVIEW

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(b)-(f); *see also Williams v. Bowen,* 844 F.2d 748, 750–52 (10th Cir. 1988) (describing five steps in detail). Under this sequential procedure, Plaintiff bears the initial burden of proving she has one or more severe impairments. *See* 20 C.F.R. § 404.1512; *Turner v. Heckler,* 754 F.2d 326, 328 (10th Cir. 1985). If she carries that burden, the ALJ will conduct a RFC assessment at step four to determine what if anything the claimant can still do despite his impairments. *See* 20 C.F.R. § 404.1545(e); *Andre v. Sec'y of Health & Human Servs.,* 985 F.2d 1045, 1048 (10th Cir. 1993). At the conclusion of step four, Plaintiff once again carries the burden

3

and must show an inability to return to past relevant work. *See* 20 C.F.R. § 404.1520(e); *Potter v. Sec'y of Health & Human Servs.,* 905 F.2d 1346, 1349 (10th Cir. 1990). If Plaintiff meets this burden, the Commissioner bears the burden of showing that a claimant is able to make an adjustment to other work by providing evidence about the existence of work in the national economy given a claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1512(f).

This Court is limited in its review of the Commissioner's final decision to a determination of whether the ALJ's "factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue,* 602 F .3d 1136, 1140 (10th Cir. 2010). To that end, reversal is necessary if the ALJ failed "'to provide this court with a sufficient basis to determine that appropriate legal principles have been followed.'" *Byron v. Heckler,* 742 F.2d 1232, 1235 (10th Cir. 1984) (citations omitted).

## IV. PLAINTIFF'S CLAIMS OF ERROR

Plaintiff raises three points of error. First, she claims that the ALJ's decision is not supported by substantial evidence. Plaintiff's Opening Brief, 3. She claims that while the ALJ found her history of back disorder, Hepatitis C, and major depressive disorder to be severe at step two, he did not consider her anxiety, tuberculosis, personality disorder, or psychosis, and so "minimizes the severity of her overall condition." *Id.* She then gives several examples of this, beginning with her argument that the ALJ incorrectly described her tuberculosis as latent, when it was active according to the medical record.

*Id.* She claims that ALJ incorrectly found that she had only one to two episodes of decompensation in analyzing whether her mental impairment met a Listing. *Id.* She claims that the record reflects numerous suicide attempts and inpatient mental health hospitalizations, and that her history of hallucinations is inconsistent with an RFC that allows for occasional contact with the public. Plaintiff's Opening Brief, 3-4. She also claims that although the ALJ gave great weight to the opinions of the state agency medical consultants, an "eye-popping 109 more pages of evidence would come in later, after they had already rendered their opinions." Plaintiff's Opening Brief, 5. She claims that these records show three more suicide attempts, and that she was getting much, much worse. *Id.* Finally, she claims that the ALJ never performed a mental residual functional capacity assessment, which she claims was crucial to her case and, thus, error. Plaintiff's Opening Brief, 5-6.

In response, the Commissioner argues that the medical record supports the state agency consultant's finding that Plaintiff had only one to two episodes of decompensation. Commissioner's Brief, 3. She notes that episodes of decompensation, as defined under Listing 12.04, must be of extended duration—further defined as occurring on average once every four months and lasting for two weeks. *Id.* The Commissioner cites to the pages in the medical record upon which Plaintiff relies, arguing that they show one inpatient treatment, one month into the adjudicated period, and another one during the twelve months prior to January 2012—the latter of which was less than two weeks in duration. Commissioner's Brief, 4-5.

5

The Commissioner also notes that Plaintiff has the burden of proof at step four, the step at which the ALJ makes his RFC finding. Commissioner's Brief, 6. The Commissioner argues that contrary to Plaintiff's claim, the ALJ properly weighed the evidence regarding her tuberculosis, her hallucinations, her Hepatitis C, and her "shaky hands." Commissioner's Brief, 6. The Commissioner asserts that Plaintiff must show more than the mere existence of a condition to establish work-related limitations. *Id.* at 6-7. The Commissioner contends that to the extent the medical record supports the existence of these conditions, it does not support the inclusion of any additional limitations in the ALJ's RFC finding. *Id.* at 7-9.

The Commissioner argues that Plaintiff does not support her argument that the opinions of the state agency consultants were not substantial evidence because there were medical records dated after their opinions. Commissioner's Brief, 10. The Commissioner first notes that Plaintiff does not cite to particular parts of the medical record to support her argument that this evidence would detract from or change those opinions and so has waived this argument. *Id.* at 10. Second, the Commissioner contends the pages that are referenced by Plaintiff are either duplications, or do not undermine the consultants' opinions. *Id.* at 11. With regard to the latter argument, the Commissioner notes that medical evidence subsequent to the opinions in question show that Plaintiff experienced suicidal ideation as a result of her mother's death, and that she was hospitalized and received medication management for situational grief. *Id.* The Commissioner points out that although Plaintiff was noted as having suicidal ideation

6

during this time, she made no suicide attempts. *Id.*

The undersigned agrees with the Commissioner that the decision of the ALJ is supported by substantial evidence. Here, although the ALJ may have referred to the consultative physician's finding of "latent" tuberculosis, he also discussed specific findings regarding Plaintiff's lung function, including the lack of inspiratory or expiratory induced cough, no increase in AP chest diameter, normal breath sounds, and a recorded FEV1 value of 2.85. Tr. 20, 22. Thus, whether her tuberculosis was latent or active, Plaintiff has pointed to no evidence of any limitations related thereto and the ALJ specifically discussed the evidence pertaining to her lung function. The ALJ thoroughly discussed Plaintiff's mental health inpatient hospitalizations, and Plaintiff's argument that the medical evidence shows more instances of decompensation than those noted by the ALJ is unfounded.

The ALJ's finding that Plaintiff can have occasional interaction with the public is not undermined by her self-report of hallucinations, and the ALJ did discuss her mental status examinations and noted past, but no present, hallucinations. There is no indication that the ALJ chose to ignore other evidence of hallucinations, and the RFC limitation to only occasional contact with the public is a significant limitation showing that the ALJ did in fact consider Plaintiff's mental impairments and their effect on her ability to work. In addition, the undersigned has reviewed the additional medical record generated after the state medical consultants' findings, and there is nothing therein supporting additional impairments or limitations. As noted above in connection with the

7

standard of review applicable to an appeal such as this, the Court is not to reweigh the evidence or retry the case, but to examine the record as a whole. While it is true that such includes consideration of all evidence, if the evidence as a whole is such that a reasonable mind could reach the same conclusion as did the ALJ, there is substantial evidence to support the decision. The undersigned finds that there is substantial evidence to support the administrative law judge's decision. It is recommended that Plaintiff's first claim of error be rejected.

Plaintiff's second claim of error is that the ALJ erred in his credibility analysis. Plaintiff's Opening Brief, 6. Plaintiff asserts what has been commonly referred to as a "*Bjornson*" error; that the ALJ used boilerplate language indicating that he relied on the RFC in concluding that a claimant is less than credible—a backward analysis that, if employed, would be inconsistent with the law governing credibility determinations. *See Bjornson v. Astrue,* 671 F.3d 640, 644-645 (7th Cir. 2012).

The Commissioner responds that the courts have found use of this boilerplate language, standing alone, does not demonstrate than an improper credibility analysis was followed. The undersigned finds the Commissioner to be correct on this point; the mere fact that the ALJ used disapproved-of language is not reversible error. *See Jimison ex rel. Sims v. Colvin,* 513 F. App'x 789, 796 (10th Cir. 2013) (rejecting claimant's challenge to the sequential order of the RFC and credibility assessments because "although the ALJ's opinion recited his RFC finding before discussing credibility, there is no indication that the ALJ did not factor in [the claimant's] credibility" and also noting

8

that the ALJ's use of boilerplate language is "'insufficient' only 'in the absence of a more thorough analysis'" (citation omitted)).

The balance of the ALJ's decision reflects that the use of the so-called boilerplate language was not error here. In proceeding through the sequential process, the ALJ set out his RFC finding, and then detailed how he had arrived at such an assessment, specifically stating that he had considered Plaintiff's symptoms. Tr. 24. The ALJ noted he was required to evaluate whether Plaintiff had shown by objective medical evidence that she suffered from a symptom-inducing impairment, and, if so, whether such an impairment could reasonably be expected to produce Plaintiff's subjective complaints and symptoms. *Id.; see also Luna v. Bowen,* 834 F.2d 161, 163–64 (10th Cir. 1987). To this end, the ALJ thoroughly summarized Plaintiff's testimony with regard to her subjective complaints, Tr. 21-22, and then determined that Plaintiff's complaints regarding the extent of her symptoms were not fully credible, *Id.* at 24-25, a determination that was linked to evidence in the record. *Id.* at 25. Notwithstanding the ALJ's use of language suggesting that the RFC had been formulated before Plaintiff's credibility was assessed, his decision plainly reflects that the opposite occurred.

Plaintiff's third claim of error is that the ALJ "missed the complete mental analysis." Plaintiff's Opening Brief, 9. Plaintiff contends that the ALJ erred in only considering Plaintiff's major depressive disorder, and ignoring evidence of psychosis, hallucinations, anxiety attacks, "and more." *Id.* Plaintiff goes on to complain about the ALJ's failure to mention Plaintiff's GAF scores, the many powerful psychotropic

medications, multiple psychiatric hospitalizations and suicide attempts, and litany of problems. Plaintiff's Opening Brief, 11-12. Plaintiff also argues that the evidence shows that even if Plaintiff could get a job, she could not sustain employment due to her psychiatric symptoms. *Id.* at 13.

The Commissioner responds that the ALJ acknowledged the treatment of Plaintiff's mental symptoms with medications—without side effects, extensively discussed the objective findings regarding Plaintiff's mental functioning, and included several limitations in the RFC related to her mental impairments. Commissioner's Brief, 14. The Commissioner also argues that failure to discuss Plaintiff's GAF scores is not, in and of itself, error. *Id.* Moreover, the Commissioner notes that the ALJ discussed the fact that Plaintiff's GAF score improved after treatment. *Id.* at 15, Tr. 21.

The undersigned's review of the decision leads to a finding that the ALJ thoroughly assessed Plaintiff's residual mental capacity. The decision extensively discussed the medical records related to her mental impairments as well as the findings of the consultative physician and state agency consultants. Plaintiff may disagree with the ALJ's conclusions regarding the extent of her limitations—as reflected in the RFC— but he certainly cannot be said to have failed to analyze the evidence related to Plaintiff's mental function. As for Plaintiff's contention regarding her inability to sustain work, the undersigned finds no medical evidence supporting that conclusion; moreover, the ALJ gave specific reasons why he found Plaintiff's subjective claims regarding her symptoms less than credible. Tr. 23-25.

## RECOMMENDATION

Having reviewed the evidence of record, the transcript of the administrative hearing, the decision of the ALJ and the pleadings and briefs of the parties, the undersigned magistrate judge finds that the decision of the Commissioner should be **AFFIRMED.**

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file specific written objections to this Report and Recommendation. See 28 U.S.C. § 636 and Fed. R. Civ. P. 72. Any such objections should be filed with the Clerk of the District Court by **February 24, 2014**. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

**ENTERED** on February 10, 2014.



SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE